Douglass, J.
This is a case heard in the common pleas court to enforce a mechanic’s lien in favor of defendant in error. The court found the equity of the casein favor of defendant in error John Bumgardner. To reverse this finding, error is prosecuted to this court.
The issue, as made up, is founded on these facts: That William MeNaughton was’fthe'jowner of a grist-mill property; that James^Hickey was the guardian of MeNaughton; that Levi Knowlton’jheldJajjmortgage lien upon the property, and these^parties are made defendants. A judgment is asked for the balance due upon this mechanic’s lien, amounting to $75.
The answer of MeNaughton sets out that at the time of making this contract for repairs,'MeNaughton was insane, and James Hickey was his guardian. That he^was adjudged insane by the^probate^court of this'Jcounty, November 14th, 1890, and was discharged on '[the213th day of December, 1893; that during that^time James Hickey was his guardian, and he was held for a time by the authorities in the asylum at Columbus. Also tbaUsaid guardian made no con *588 tract for such repairs,and notified Bumgardner that he was-guardian, and would not pay for any such repairs.
As a second defense, McNaughton sets up that many of: the repairs were unnecessary as made. That they were not made at his direction as agreed; that Bumgardner and his-help put in the time uselessly. Also, a counterclaim for defective work. The reply is a general denial.
Evidence was introduced showing a finding of insanity in the probate court in November, 1890; the appointment of Hickey as guardian, and his discharge in December 1893. The work was done between 1890 and 1893.
This, under the authorities, would make a prima facie case that an insane person would not be competent to enter into a valid binding contract.
It appears from the record that Bumgardner had heard of the appointment of the guardian, and sought an interview with Hickey, and that Knowlton, the mortgagee, was present at one of these interviews; the record discloses that Hickey declined to assume any responsibility in this matter whatever. That is, that he did not want to become obligated himself,to pay either as guardian or as an individual, disclaiming that he had any authority over this property.
The record discloses the fact that the appointment was for a single purpose, — to enable the guardian to secure a pension for the ward. Of course, that does not change the-general effect of the finding of insanity.
The work was discontinued for some time, and, after an interview with the parties, the-work was completed; payments were made, $75 remaining unpaid, and a mechanic’s lien perfected under the statute.
It is contended by the plaintiff in error that it was sought to get through this case by a claim for necessaries, but no such claim was made or argued by the defendant in error any more than this: Not that they were necessaries and that therefore the “record” insane person (in' this case,. *589 McNaughton) was properly chargeable as an infant would ‘be for necessaries, but the contention was that this was á judicious and wise repair; that there was no overreaching; i:hat there was no fraud. All that defense to which I have alluded was abandoned, excepting the mere fact of insanity. That the work was properly done, worth the cost, and that it was judicious and wise, under this record, there can be no question. This mill property in the control of McNaughton was practically without value unless it could be put in a ■condition in which the property could be made available as mill property, and some work done in it; and Mr. Knowlton, who was present at one of these conversations when the work was discontinued, could not object because this work enhanced its value. So looking at the case, there is no fraud, or overreaching, or anything of that sort. The work that was done under this contract was well worth its cost, •and was a judicious and wise repair, but not a “necessary,” There is no contention on the part of defendants in error ■that it was a necessary that would bring this ward within the category of infants for whom necessaries furnished •should be paid for.
5á Ohio St.., 398, is relied upon as authority by the ■plaintiff in error. We have these propositions announced ■in the first and second syllabi:
“As a general rule the promissory note of a person non ■compos mentis, is invalid; but the rule is subject to the •qualification that when such a note is given for necessaries, •or for other adequate consideration of benefit furnished the maker in good faith without knowledge of his unsound mental condition, it may be enforced to the extent of' the 'value of the consideration so furnished.
“2. Such mental incapacity of the maker is prima facie a complete defense to an action on a note signed by him, ■and when interposed, the burden is upon the plaintiff to prove the consideration for the note, and other facts necessary to overcome such defense and entitle him to recover.”
*590 We have also cited on thin, 6 Bull., 33, where, in discussing this matter, Judge Force says:
“Accordingly,where a mortgage, fair in itself, was given to one who had no knowledge or notice of the insanity, such mortgagee had a right to foreclose, and the insanity of the mortgagor is no defense.
“In the United States, the cases are not all in accord. In New York it is held that if the grantor is so insane that he does not know what it is that he is doing when he executes the deed, the deed is void. And a mortgage executed by one whose mind is enfeebled and affected, yet who understands what he is doing, if the transaction is in all respects fair, is valid and will be enforced.
“The supreme court of Pennsylvania held that Thompson v. Leach is still a correct statement of the law, and as we have no feoffments, but only conveyances by deed, the deed of conveyance of an insane person is void.”
In the 5 Bulletin, 788, before Avery, Cox and Johnson, we have a discussion of this matter that lends some aid. There was a request made to charge the jury that if it were found that the defendant was insane at the time of the contract, the contract would be void; “instead of which the court charged that to sustain the defense the jury must find the defendant to have been of unsound mind and incapable of making a contract at the time of the contract, and also that the plaintiff knew of this state of defendant’s mind, or that by fraud or misrepresentation he had profited by it.’’ Judge Cox, in discussing this,says:
“Most of the authorities hold that it would interfere too much with the general course of business to add such a new element of risk as the avoiding a contract because of the insanity of one party when the other party did not know of such insanity, or was not guilty of fraud. This doctrine is sustained by the best authorities.’’ * * *
“We think that the weight of the testimony was that the plaintiff below had no knowledge of the insanity of the defendant, and was not guilty of any fraud or misrepresentation, and that therefore the verdict was sustained by the weight of the evidence.’’
A. A. Star-el, on behalf of Plaintiff in Error.
Edward Kibler, on behalf of Defendant in Erorr,
Of course, we have this fact that there was au adjudication by the probate court of insanity, and from 1890 to 1898 this work was done. The record is clear, from the testimony of Hickey, the guardian, principally, and from all the evidence in the case, that the guardian never assumed any control of this property. ■ William McNaughton controlled it. Neither did the guardian assume any control of his person, but simply says, by his own testimony, that he was appointed for the one specific purpose; and,, when asked in reference to the matter, before the contract was entered into, he disclaimed any right to enter into it, and said that he hadn’t taken any control of it, and that McNaughton had collected his own rents and managed his own property.
We think from this fact, and from what.the record discloses as to what was said and done when this contract was entered into, and the doubtful nature of what was understood by Mr. Bumgardner at the time when he first talked to McNaughton and engaged to make this repair, and also the further fact that there is no fraud or imposition, but a wise and judicious repair, and that it was well worth its cost, that this judgment ought to be affirmed, and it is so .ordered.